**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | )**DOCKET NO. 24-CR-10132-IT** |
| | ) |
| **SEAN PALMER** | ) |

**SENTENCING MEMORANDUM ON BEHALF OF SEAN PALMER**


*Exhibit B*


Commonwealth Records Regarding Sixty Four Bridge, LLC and The Satanic Temple



# Secretary of the Commonwealth of Massachusetts
William Francis Galvin

       

Home    Popular Features    Departments    News & Events    Records    Publications    Services    Learning    About Us

## Corporations

## Business Entity Results

**Number of records: 1**

Print results

| Entity Name | ID Number | Old ID Number | Address |
|---|---|---|---|
| SIXTY FOUR BRIDGE LLC | ███████ | | 64 BRIDGE STREET SALEM, MA 01970 USA |

New Search

**William Francis Galvin** Secretary of the Commonwealth of Massachusetts

**Connect with Us**



**The Commonwealth of Massachusetts**
**William Francis Galvin**

Minimum Fee: $500.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## Certificate of Organization
(General Laws, Chapter )

**Identification Number:** ████████

**1. The exact name of the limited liability company is:** <u>SIXTY FOUR BRIDGE LLC</u>

**2a. Location of its principal office:**

No. and Street: ████████

City or Town: <u>SOMERVILLE</u>    State: <u>MA</u>    Zip: ████    Country: <u>USA</u>

**2b. Street address of the office in the Commonwealth at which the records will be maintained:**

No. and Street: ████████

City or Town: <u>SOMERVILLE</u>    State: <u>MA</u>    Zip: ████    Country: <u>USA</u>

**3. The general character of business, and if the limited liability company is organized to render professional service, the service to be rendered:**
<u>ACQUIRE, MANAGE AND OPERATE REAL ESTATE ALONG WITH ALL LAWFUL OTHER BUSINESS IN THE COMMONWEALTH.</u>

**4. The latest date of dissolution, if specified:**

**5. Name and address of the Resident Agent:**
Name: ████████
No. and Street: ████████

City or Town: <u>SOMERVILLE</u>    State: <u>MA</u>    Zip: ████    Country: <u>USA</u>

**I,** ████████**, resident agent of the above limited liability company, consent to my appointment as the resident agent of the above limited liability company pursuant to G. L. Chapter 156C Section 12.**

**6. The name and business address of each manager, if any:**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code |
|---|---|---|
| MANAGER | ████████ | SOMERVILLE, MA ████ |

**7. The name and business address of the person(s) in addition to the manager(s), authorized to execute documents to be filed with the Corporations Division, and at least one person shall be named if there are no managers.**

3

| Title | Individual Name | Address (no PO Box) |
|---|---|---|
| | First, Middle, Last, Suffix | Address, City or Town, State, Zip Code |
| SOC SIGNATORY | ▮▮▮▮▮▮ | ▮▮▮▮▮▮<br>SOMERVILLE, MA ▮▮ |

**8. The name and business address of the person(s) authorized to execute, acknowledge, deliver and record any recordable instrument purporting to affect an interest in real property:**

| Title | Individual Name | Address (no PO Box) |
|---|---|---|
| | First, Middle, Last, Suffix | Address, City or Town, State, Zip Code |
| REAL PROPERTY | ▮▮▮▮▮▮ | ▮▮▮▮▮▮<br>SOMERVILLE, MA ▮▮ |

**9. Additional matters:**

**SIGNED UNDER THE PENALTIES OF PERJURY, this 23 Day of June, 2015,**

▮▮▮▮▮▮

*(The certificate must be signed by the person forming the LLC.)*

© 2001 - 2015 Commonwealth of Massachusetts
All Rights Reserved

THE COMMONWEALTH OF MASSACHUSETTS

I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

June 23, 2015 09:14 AM

WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*



# Secretary of the Commonwealth of Massachusetts
William Francis Galvin



 Home  Popular Features  Departments  News & Events  Records  Publications  Services  Learning  About Us

## Corporations

## Business Entity Results

**Number of records: 2**

Print results

| Entity Name | ID Number | Old ID Number | Address |
|---|---|---|---|
| THE SATANIC TEMPLE | ▋▋▋▋ | | 64 BRIDGE STREET<br>SALEM, MA 01970 USA |
| THE SATANIC TEMPLE, INC. | ▋▋▋▋ | | 64 BRIDGE STREET<br>SALEM, MA 01970 USA |

New Search



**The Commonwealth of Massachusetts**
**William Francis Galvin**

Minimum Fee: $35.00

Secretary of the Commonwealth, Corporations Division
One Ashburton Place, 17th floor
Boston, MA 02108-1512
Telephone: (617) 727-9640

## Articles of Organization
(General Laws, Chapter 180)

**Identification Number:** ███████████

### ARTICLE I

The exact name of the corporation is:

THE SATANIC TEMPLE

### ARTICLE II

The purpose of the corporation is to engage in the following business activities:

THIS CORPORATION IS ORGANIZED AS A TAX-EXEMPT ORGANIZATION EXCLUSIVELY FOR ONE OR MORE OF THE PURPOSES SPECIFIED UNDER SECTION 501(C) OF THE INTERNAL RE VENUE CODE. SPECIFICALLY, THE CORPORATION IS ORGANIZED AS A CHURCH OR RELIGI OUS INSTITUTION AS DESCRIBED UNDER 501(C)(3). THE PURPOSE OF THE CORPORATION IS TO ENGAGE IN THE FOLLOWING ACTIVITIES: A) THE PROMOTION OF THE BELIEFS, IDEALS, AND TENETS OF THE RELIGION. B) MUTUAL SUPPORT AND ASSISTANCE OF THE RELIGIO N'S MEMBERS. C) HOLDING RELIGIOUS EVENTS AND CEREMONIES. D) INTERACTION WITH THE COMMUNITIES WITHIN WHICH THE CHURCH HAS A PRESENCE. E) TO ENGAGE IN SUC H OTHER ACTIVITIES CONSISTENT WITH THE OPERATION OF A NON-PROFIT CHURCH AS D ESCRIBED BY SECTION 501(C)(3) OF THE INTERNAL REVENUE CODE OR CORRESPONDING S ECTION OF ANY FUTURE FEDERAL TAX CODE.

### ARTICLE III

A corporation may have one or more classes of members. If it does, the designation of such classes, the manner of election or appointments, the duration of membership and the qualifications and rights, including voting rights, of the members of each class, may be set forth in the by-laws of the corporation or may be set forth below:

AS STATED IN THE BYLAWS OF THE CORPORATION

### ARTICLE IV

Other lawful provisions, if any, for the conduct and regulation of the business and affairs of the corporation, for its voluntary dissolution, or for limiting, defining, or regulating the powers of the corporation, or of its directors or members, or of any class of members, are as follows:
*(If there are no provisions state "NONE")*

UPON DISSOLUTION OF THIS CORPORATION, ITS ASSETS REMAINING AFTER PAYMENT OR PROVISION FOR PAYMENT, OF ALL DEBTS AND LIABILITIES OF THIS CORPORATION, SHAL L BE DISTRIBUTED FOR ONE OR MORE EXEMPT PURPOSES WITHIN THE MEANING OF SECTI ON 501{C)(3) OF THE INTERNAL REVENUE CODE OR SHALL BE DISTRIBUTED TO THE FEDER AL GOVERNMENT, OR TO A STATE OR LOCAL GOVERNMENT, FOR A PUBLIC PURPOSE. NO

SUBSTANTIAL PART OF THE ACTIVITIES OF THIS CORPORATION SHALL BE THE CARRYING ON OF PROPAGANDA, OR OTHERWISE ATTEMPTING TO INFLUENCE LEGISLATION (EXCEPT AS OTHERWISE PROVIDED BY SECTION 501 (H) OF THE INTERNAL REVENUE CODE) AND TH IS CORPORATION SHALL NOT PARTICIPATE IN, OR INTERVENE IN (INCLUDING THE PUBLIS HING OR DISTRIBUTION OF STATEMENTS), ANY POLITICAL CAMPAIGN ON BEHALF OF, OR IN OPPOSITION TO ANY CANDIDATE FOR PUBLIC OFFICE. NOTWITHSTANDING ANY OTHE R PROVISIONS OF THESE BYLAWS, THIS CORPORATION SHALL NOT CARRY ON ANY ACTI VITIES NOT PERMITTED TO BE CARRIED ON (A) BY A CORPORATION EXEMPT FROM FEDER AL INCOME TAX UNDER SECTION 501(C)(3) OF THE INTERNAL REVENUE CODE OR (B) BY A CORPORATION, CONTRIBUTIONS TO WHICH ARE DEDUCTIBLE UNDER SECTION 170(C)(2) O F THE INTERNAL REVENUE CODE. NO PART OF THE NET EARNINGS OF THIS CORPORATION SHALL INURE TO THE BENEFIT OF, OR BE DISTRIBUTABLE TO. ITS MEMBERS. DIRECTORS. O FFICERS. OR OTHER PRIVATE

*Notes: The preceding four (4) atricles are considered to be permanent and may only be changed by filing appropriate Articles of Amendment.*

**ARTICLE V**

The by-laws of the corporation have been duly adopted and the initial directors, president, treasurer and clerk or other presiding, financial or recording officers, whose names are set out on the following page, have been duly elected.

**ARTICLE VI**

The effective date of organization of the corporation shall be the date approved and filed by the Secretary of the Commonwealth. If a *later* effective date is desired, specify such date which shall not be more than *thirty days* after the date of filing.

**ARTICLE VII**

The information contained in Article VII is not a permanent part of the Articles of Organization.

**a. The street address** *(post office boxes are not acceptable)* **of the principal office of the corporation in** *Massachusetts* **is:**

No. and Street:          64 BRIDGE STREET
City or Town:          SALEM          State: MA          Zip: 01970          Country: USA

**b. The name, residential street address and post office address of each director and officer of the corporation i  a  follow**

| Title | Individual Name<br>First, Middle, Last, Suffix | Address (no PO Box)<br>Address, City or Town, State, Zip Code | Expiration of Term |
|---|---|---|---|
| PRESIDENT | ▌ | ▌<br>SOMERVILLE, MA ▌<br>SOMERIVLLE, MA ▌ | 12/31/2019 |
| TREASURER | ▌ | ▌<br>SOMERVILLE, MA ▌<br>SOMERIVLLE, MA ▌ | 12/31/2019 |
| CLERK | ▌ | ▌<br>SOMERVILLE, MA ▌<br>SOMERIVLLE, MA ▌ | 12/31/2019 |
| DIRECTOR | ▌ | ▌<br>SOMERVILLE, MA ▌<br>SOMERIVLLE, MA ▌ | 12/31/2019 |

**c. The fiscal year (i.e., tax year) of the business entity shall end on the last day of the month of:**
December

**d. The name and business address of the resident agent, if any, of the business entity is:**

Name: ███████████████

No. and Street: ████████████████████

City or Town: <u>SOMERILLE</u>    State: <u>MA</u>    Zip: ██████    Country: <u>USA</u>

**I/We, the below signed incorporator(s), do hereby certify under the pains and penalties of perjury that I/we have not been convicted of any crimes relating to alcohol or gaming within the past ten years. I/We do hereby further certify that to the best of my/our knowledge the above-named officers have not been similarly convicted. If so convicted, explain:**

**IN WITNESS WHEREOF AND UNDER THE PAINS AND PENALTIES OF PERJURY, I/we, whose signature(s) appear below as incorporator(s) and whose name(s) and business or residential address (es) beneath each signature do hereby associate with the intention of forming this business entity under the provisions of General Law, Chapter 180 and do hereby sign these Articles of Organization as incorporator(s) this 14 Day of November, 2017.** *(If an existing corporation is acting as incorporator, type in the exact name of the business entity, the state or other jurisdiction where it was incorporated, the name of the person signing on behalf of said business entity and the title he/she holds or other authority by which such action is taken.)*

███████████████████████    <u>SOMERVILLE, MA</u>██████

© 2001 - 2017 Commonwealth of Massachusetts
All Rights Reserved

MA SOC   Filing Number: ████████████    Date: 11/14/2017 10:04:00 PM


THE COMMONWEALTH OF MASSACHUSETTS


I hereby certify that, upon examination of this document, duly submitted to me, it appears

that the provisions of the General Laws relative to corporations have been complied with,

and I hereby approve said articles; and the filing fee having been paid, said articles are

deemed to have been filed with me on:

November 14, 2017 10:04 PM


WILLIAM FRANCIS GALVIN

*Secretary of the Commonwealth*

SO.ESSEX
07/02/2015 01:26 PM  MTG Pg 1/3
eRecorded

13

# MORTGAGE

WHEN RECORDED MAIL TO:
Lake Sunapee Bank, PO Box 7, Newport, NH 03773

SEND TAX NOTICES TO:
Sixty Four Bridge LLC, ██████████████ Somerville, MA ██████
**FOR RECORDER'S USE ONLY**

Property Address: 64 Bridge Street, Salem, MA 01970.

**MAXIMUM LIEN.** The lien of this Mortgage shall not exceed at any one time $135,000.00.

THIS MORTGAGE dated July 2, 2015, is made and executed between Sixty Four Bridge LLC, a Massachusetts Limited Liability Company, whose address is ██████████████████ Somerville, MA ██████ (referred to below as "Grantor") and Lake Sunapee Bank, fsb, whose address is ██████████████ Concord, NH ██████ (referred to below as "Lender").

**GRANT OF MORTGAGE.**  For valuable consideration, Grantor grants to Lender with MORTGAGE COVENANTS all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in **Essex** County, Commonwealth of Massachusetts:

See Schedule A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 64 Bridge Street, Salem, MA 01970.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.**  In addition to the Note, this Mortgage secures all future advances made by Lender to Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Grantor, together with all interest thereon.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:  ·

**PAYMENT AND PERFORMANCE.**  Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.**  Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

64 Bridge St., Salem, MA 01970

# MORTGAGE
## (Continued)

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. In addition, Grantor represents and warrants that Grantor's Property does not contain urea formaldehyde foam insulation or urea formaldehyde resin in violation of any Massachusetts state laws. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably

**MORTGAGE**
**(Continued)**                                                      Page 3

satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Massachusetts law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as

**MORGAGE**
**(Continued)**                                                    Page 4

Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of ten (10) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and

**MORTGAGE**
**(Continued)**

Page 5

will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at

## MORTGAGE
## (Continued)

any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness, including without limitation all future advances, when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the

# MORTGAGE
## (Continued)

Page 7

insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Statutory Condition.** Breach of the Statutory Condition.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any Indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default in payment, is curable and if Grantor has not been given a notice of a breach of the same provision of this Mortgage within the preceding twelve (12) months, it may be cured if Grantor, after Lender sends written notice to Grantor demanding cure of such default: (1) cures the default within thirty (30) days; or (2) if the cure requires more than thirty (30) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** This Mortgage is upon the **STATUTORY CONDITION** for any breach of which Lender, the mortgagee, shall have the **STATUTORY POWER OF SALE.** In addition, upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Foreclosure.** Lender may invoke the **STATUTORY POWER OF SALE,** in which case Lender shall mail a copy of a notice of sale to Grantor and to any other person required by applicable law, in the manner provided by applicable law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take

**MORTGAGE**
**(Continued)**

possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least fourteen (14) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties,

**MORTGAGE**
**(Continued)**                                                          Page 9

specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**HOMESTEAD INFORMATION.** This is not homestead property.

**WAIVERS AND MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** **With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the Commonwealth of Massachusetts. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of New Hampshire without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of New Hampshire.**

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Merrimack County, State of New Hampshire.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a

## MORTGAGE
### (Continued)

person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time Is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** **All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Sixty Four Bridge LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Massachusetts Hazardous Waste Management Act, Mass. Gen. Laws Ch. 21C, the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws, Ch. 21E, or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Sixty Four Bridge LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage. Specifically, without limitation, Indebtedness includes the future advances set forth in the Future Advances provision of this Mortgage, together with all interest thereon.

**Lender.** The word "Lender" means Lake Sunapee Bank, fsb, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

## MORTGAGE
### (Continued)

Page 11

**Note.** The word "Note" means the promissory note dated July 2, 2015, in the original principal amount of **$135,000.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

THIS MORTGAGE IS GIVEN UNDER SEAL AND IT IS INTENDED THAT THIS MORTGAGE IS AND SHALL CONSTITUTE AND HAVE THE EFFECT OF A SEALED INSTRUMENT ACCORDING TO LAW.

GRANTOR:

SIXTY FOUR BRIDGE LLC

By: _____ (Seal)
Manager of Sixty Four Bridge LLC

**MORTGAGE**
**(Continued)**                                                    Page 12

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF _New Hampshire_                              )
                                                     ) SS
COUNTY OF _Hillsborough_                              )

On this ___2nd___ day of ___July___, 20 _15_, before me, the
undersigned notary public, personally appeared ▋▋▋▋▋▋ Manager of Sixty Four Bridge LLC,
proved to me through satisfactory evidence of identification, which were _Drivers_
_License_, to be the person whose name is signed on the
preceding or attached document, and acknowledged to me that he or she signed it voluntarily
for its stated purpose as a member or designated agent for ~~Sixty Four Bridge LLC,~~ a limited
liability company.

Notary Public

My commission expires _4/23/19_

LaserPro, Ver. 15.1.0.023  Copr. D+H USA Corporation 1997, 2015.  All Rights Reserved.  -
MA/NH  G:\CFI\LPL\G03.FC  TR-5650  PR-11

**Exhibit A - Property Description**

**Closing Date:**         **06/19/2015**

**Borrower(s):**         **Sixty Four Bridge LLC**

**Property Address:**      **64 Bridge Street, Salem, MA 01970**

The land in Salem, Essex County, Massachusetts, with the buildings thereon shown on a plan entitled "Plan of Land in Salem" prepared by North Shore Survey Corporation, dated March 2, 1994 revised April 12, 1994 and recorded with the Essex South District Registry of Deeds in Plan Book███████████("Plan") being Lot 1 ·     on said Plan said lots being bounded and described as follows:

Lot1

SOUTHEASTERLY by Bridge Street One Hundred Forty Three and 90/100 (143.90) feet;

NORTHEASTERLY by land now or formerly of Tache and land now or formerly of Martins as shown on said plan One Hundred Two and 24/100 (102.24) feet;

NORTHWESTERLY on two courses by Lot 4 on said Plan One Hundred and 16/100 (100.16) feet and by land now or formerly of Hodge Forty One and 00/100 (41.00) feet;

SOUTHWESTERLY by land now or formerly of RST Realty Trust and Nicole Realty Trust One Hundred Fourteen and 64/100 (114.64) feet.

For Mortgagors' Title see Deed recorded herewith.

E-Closing: EXHIBIT_A                  File: ███████
Grugnale & Schlesinger, PC

Return to
Bar Harbor Bank & Trust
Loan Operations
PO Box 29
Newport NH 03773
2000385362



12/16/2021 10:30 DIS Pg 1/1

# DISCHARGE OF MORTGAGE AND ASSIGNMENT OF RENTS

**BAR HARBOR BANK & TRUST,** a banking corporation with a place of business in Bar Harbor, Maine, successor by merger to Lake Sunapee Bank, fsb, holder of a Mortgage and Assignment of Rents from **Sixty Four Bridge LLC** to Lake Sunapee Bank dated **July 2, 2015** in the **South Essex** County Registry of Deeds in **Book** ████ **Page** ████ **and Book** ████ **and Page** ████ pursuant to a merger between Lake Sunapee Bank to Bar Harbor Bank & Trust hereby discharges the said Mortgage and Assignment of Rents.

Property located in **64 Bridge Street, Salem MA 01970**

**December 13, 2021**

Witness

**BAR HARBOR BANK & TRUST**

Saxon L. A. Tinto
Duly Authorized
VP, Loan Operations Manager

STATE OF NEW HAMPSHIRE
SULLIVAN COUNTY, ss

At Newport, in the said County, on this **13th day of December, 2021** personally appeared Saxon L A Tinto and she made oath that she is an officer or agent of Bar Harbor Bank & Trust authorized to execute this instrument and that this instrument was executed as her free act and deed and the free act and deed of Bar Harbor Bank & Trust.

Before me,

Notary Public

ed/kw

BRYANT T DOLE
NOTARY PUBLIC
NEW HAMPSHIRE

07/02/2015 01:26 PM  DEED Pg 1/3
eRecorded

MASSACHUSETTS EXCISE TAX
Southern Essex District ROD
Date: 07/02/2015 01:26 PM
ID: 1074514 Doc# 20150702003710
Fee: $1,944.84
Cons: $426,500.00

3

# QUITCLAIM DEED

**MJMJ Inc., a Massachusetts Corporation** with a principal office located at 64 Bridge Street, Salem , MA 01970

in consideration of **Four Hundred Twenty Six Thousand Five Hundred Dollars 00/100 ($426,500.00)**

Grants to: **Sixty Four Bridge, LLC, a Massachusetts Limited Liability Company**

With a business address of: ████████████████          **Somerville, MA** ████

## WITH QUITCLAIM COVENANTS,

The real property with the buildings and improvements thereon, situated in Salem, Essex County, Massachusetts, being more particularly described in Exhibit "A" attached hereto and made a part hereof by reference.

**PROPERTY ADDRESS:    64 Bridge Street, Salem, MA 01970**

Being a portion of the premises conveyed to grantor herein by quitclaim deed to **MJMJ Inc., a Massachusetts Corporation**, dated February 28, 2006 and recorded at the Essex County Registry of Deed, Southern District, ████████████ .

Executed under seal the __2ND__ day of __JULY__ , 2015 as the free act and deed MJMJ Inc., a Massachusetts Corporation, by ██████████████████ its __President__ .

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

11/22/2022 11:12 AM  UCC Pg 1/2
eRecorded

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGMENT TO:  (Name and Address)**

2412 63419
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: Massachusetts
(Essex County Southern District)

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME 64 Bridge Llc | | | |
|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 64 Bridge St | CITY Salem | STATE MA | POSTAL CODE 01970 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only <u>one</u> Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 64 Bridge St | CITY Salem | STATE MA | POSTAL CODE 01970 | COUNTRY USA |

**3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY):** Provide only <u>one</u> Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Tesla, Inc. | | | |
|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 12832 S Frontrunner Blvd, Suite 100 | CITY Draper | STATE UT | POSTAL CODE 84020 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All energy generation systems and associated components at any time provided by Tesla, Inc. to Debtor. The Secured Party is not taking a security interest in the real property (except solely to the extent the foregoing is a fixture). The Secured Partys only security interest is in the specific collateral described in this section.

| 5. Check <u>only</u> if applicable and check <u>only</u> one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative | | | |
|---|---|---|---|
| **6a. Check <u>only</u> if applicable and check <u>only</u> one box:** | | | **6b. Check <u>only</u> if applicable and check <u>only</u> one box:** |
| ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility | | | ☐ Agricultural Lien  ☐ Non-UCC Filing |
| **7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | | | |

**8. OPTIONAL FILER REFERENCE DATA:** JB-0192087-00 - 27042135

2412 63419

26

**FILING OFFICE COPY** — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

**9. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME

64 Bridge Llc

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

**10. DEBTOR'S NAME:** Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)                    SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**11.** ☐ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

| 13. ☑ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable) | 14. This FINANCING STATEMENT: ☐ covers timber to be cut   ☐ covers as-extracted collateral   ☑ is filed as a fixture filing |
|---|---|
| 15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest): 64 Bridge Llc  64 Bridge St Salem Ma 01970 | 16. Description of real estate: A PARCEL OF LAND LOCATED IN THE STATE OF MA, COUNTY OF ESSEX,  WITH A SITUS ADDRESS OF 64 BRIDGE ST, SALEM MA 01970-4131 C005 CURRENTLY OWNED BY 64 BRIDGE LLC HAVING A TAX ASSESSOR NUMBER OF SALE-000036-000000-000153 AND DESCRIBED IN DOCUMENT NUMBER ████ DATED 07/02/2015 AND RECORDED 07/02/2015.APN: SALE-000036-000000-000153BOOK: ████ |

17. MISCELLANEOUS:

**FILING OFFICE COPY** — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)



**Secretary of the Commonwealth of Massachusetts**

William Francis Galvin

|  |  |  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|---|---|
| Home | Popular Features | Departments | News & Events | Records | Publications | Services | Learning | About Us |

## Corporations

## Search for a Business Entity

\* No records found; try a new search using different criteria
Links on this page open in another tab.

**Legal Information, Disclaimers, Policies**          **Search assistance. . .**

**Search by:**

● Entity Name    ○ Individual Name    ○ Identification Number    ○ Filing Number

**Search by entity name** (Company, LP, LLP, LLC, etc.)

| Enter name: | salem art gallery |
|---|---|
| Search type: | Begins with ∨ |

**Display number of items to view:** | 25 items ∨ | per page

[Clear search fields]          [Search Corporations]